IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| YARIXA CINTRON, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| | : | NO. 20-3420 |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI[1], | : | |
| Acting Commissioner of Social Security, | : | |
|     Defendant. | : | |

**MEMORANDUM OPINION**

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                          April 21, 2022

      This action was brought pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), which denied the application of Yarixa Cintron ("Cintron") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 301, *et seq.* (the "Act"). Presently before the Court is Plaintiff's Brief and Statement of Issues in Support of Request for Review ("Pl. Br.") (Doc. 14); Defendant's Response to Plaintiff's Request for Review ("Def. Br.") (Doc. 15); Plaintiff's Reply Brief (Doc. 16); and the record of the proceedings before the Administrative Law Judge ("ALJ") (Doc. 11) (hereinafter "R."). Plaintiff asks the Court to reverse the decision of the ALJ and to remand the matter to the Commissioner for a calculation of benefits or for further development and analysis. The Commissioner seeks the

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, therefore, she should be substituted for Andrew Saul as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

entry of an order affirming the decision of the ALJ.  For the reasons set forth below, we affirm the decision.

I.      FACTUAL AND PROCEDURAL HISTORY

Cintron received a high school education in Puerto Rico, and while she could read and write small words in English, she reported that she could not understand written English nor sustain a conversation in English.  (R. 47, 51-52, 206.)  Her past work experience, at least some of which was in Puerto Rico, was as a receptionist and secretary.  (R. 54-56.)  She last worked in 2013.

Cintron first applied for disability benefits in May 2014, alleging an onset of disability as of May 1, 2013.  That application resulted in an unfavorable decision from an ALJ.  After the Appeals Council denied review, that ALJ decision became the final decision of the Commissioner, establishing that she was not disabled during the adjudicated period, that is, from May 1, 2013 to April 13, 2016.

The decision now on review before us arises from her subsequent application for DIB and SSI, which she protectively filed on August 15, 2017.  She sought to be found disabled beginning after the end of the previously-adjudicated time period – April 13, 2016.  She was 47 years old as of the alleged disability onset date at issue here.  In her application materials, she identified a number of conditions that she believed prevented her from working, including fibromyalgia, arthritis of the lower back, lumbar and cervical radiculopathy, chronic obstructive pulmonary disease (COPD), obstructive sleep apnea, insomnia, anxiety, depression, anemia, and partial removal of one of her kidneys. (R. 207.)

The state agency denied her claim on October 24, 2017 and Cintron requested a hearing with an ALJ.  At the time the state agency denied her claim, it had gathered records from her hematologist, podiatrist, rheumatologist, and gastroenterologist.  It did not have the benefit of any

mental health treatment records nor any treating or examining providers' opinions as to her functional capacity, and it did not refer her for any consultative examinations. However, through counsel, and in advance of her hearing, Cintron obtained and submitted to the ALJ additional records of her medical and mental health treatments since her claim had last been evaluated by the state agency.

The ALJ convened a video hearing on February 21, 2019, at which Cintron appeared with counsel and testified with the benefit of a Spanish interpreter. An impartial vocational expert ("VE") testified regarding the vocational requirements of various positions. Counsel shared his theory that since the earlier denial decision, Cintron presented with "compelling evidence from a rheumatologist of fibromyalgia" and "more compelling diagnostic and clinical evidence of persistent anemia causing fatigue[.]" (R. 59-60.) He noted that neither in the prior application nor in this one did the state agency order a physical consultative examination, and as "this is a fairly complex case with the fibromyalgia, and the anemia[,] … it would be reasonable to have a C.E. in this case." (R. 60-61.) He also argued that Cintron's mental health treatment records documented that she would no longer be capable of her skilled, past relevant work and that if she were precluded from her past work, there were specific "grid rules" pursuant to which she would be found disabled based on her age and what he presumed would be her exertional level.[2] (R. 60.)

The ALJ issued a written decision on May 14, 2019 denying Cintron's application. He found that she remained capable of performing her past work as a secretary and, additionally, that she had the functional capacity for other positions that existed in significant numbers in the

---

[2] In the prior decision, the ALJ found Cintron capable only of sedentary work, and counsel cited to the grid rules applicable to someone limited to the sedentary exertional level. In this decision, however, the ALJ ultimately found Cintron capable of work at the "light" exertional level such that the particular grid formulas described by counsel were not implicated.

3

national economy. (R. 24-26.) Cintron sought further administrative review in the Appeals Council but that body did not disturb the ALJ's decision, which rendered it the final decision of the Commissioner. This litigation followed.

## II.     STANDARD OF REVIEW

This Court must determine whether the ALJ's conclusion that Cintron could perform her past relevant work or other work is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F. 3d 546, 552 (3d Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of evidence." *Rutherford*, 399 F.3d at 552. The factual findings of the Commissioner must be accepted as conclusive, provided they are supported by substantial evidence. *Richardson*, 402 U.S. at 390 (citing 42 U.S.C § 405(g); *Rutherford*, 39 F.3d at 552). The review of legal questions presented by the Commissioner's decision, however, is plenary. *Shaudeck v. Commissioner of Social Security Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).

## III.    DECISION UNDER REVIEW

The issue before the ALJ at the time of the May 14, 2019 decision under review was whether Cintron had been disabled within the meaning of the Act at any time since the April 13, 2016 date. The ALJ applied the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520(a) and 416.920(a) to reach his conclusion. There is no dispute as to his findings at the first three steps: that Cintron had not engaged in substantial gainful activity since the alleged onset

date (R. 18, Finding No. 2); that she suffered from severe, medically-determinable impairments[3] (R. 18, Finding No. 3); and that she did not have an impairment or combination of impairments that satisfied the criteria of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). (R. 18, Finding No. 4.)

The ALJ then considered Cintron's residual functional capacity ("RFC"), which is defined as "the most [a claimant] can do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). He determined:

> **5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can occasionally (1/3 of an 8-hour workday) balance, stoop, kneel, crouch, but never crawl; restricted to a relatively clean work environment with low levels of pollutants, stable temperatures, and no toxic fumes; restricted to indoor work only; should avoid frequent ascending and descending of stairs; and can have only occasional interaction with the public, coworkers, and supervisors.**

(R. 21, Finding No. 5.) Proceeding to Step Four, the ALJ considered whether, with this RFC, Cintron was capable of performing any past relevant work either as the position was usually performed or as she actually performed it. In Cintron's case, those were positions as a receptionist and as a secretary, and the VE's testimony at the hearing suggested that such an individual could perform the secretary position if the job were tailored in a particular fashion. Purportedly in reliance on the VE testimony given at the hearing, the ALJ concluded that Cintron was capable of performing her past work as a secretary "as [that position] was actually performed," which justified the finding that she was not disabled. (R. 24.) The ALJ nonetheless then proceeded to Step Five to make an alternative finding, which effectively functioned as a backstop for his determination

---

[3] The specific impairments that the ALJ recognized to be severe were: fibromyalgia, arthritis, obesity, anemia, lumbar/cervical radiculopathy, asthma, and depression. (R. 18, Finding No. 3.)

5

that Cintron was not disabled by virtue of his Step Four finding. Again citing to testimony from the VE at the hearing, the ALJ determined that Cintron was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, specifically: photocopy machine operator; laundry folder; and office helper – all of which were unskilled positions. (R. 25.) Accordingly, he found that she had not been under a disability from her alleged onset date through the date of his decision. (R. 26, Finding No. 7.)

## IV.  DISCUSSION

Cintron contends that the ALJ's findings at Steps Four and Five — that she is capable of performing past relevant work as well as other substantial gainful activity — are the product of legal error. She points to four alleged errors requiring remand. The first concerns the ALJ's failure to include in his RFC finding or in his hypothetical questions to the VE certain limitations that he found credible in earlier steps of the sequential evaluation. In the second issue she presents, Cintron asserts that she could not, in fact, perform her past relevant work with the limitations that the ALJ recognized in her, thus undercutting the Step Four finding on which the decision is principally based. Third, she contends that the ALJ's finding as to her RFC is not supported by substantial evidence in that he failed to develop the record in certain respects as to both her physical and mental impairments. Finally, she contends that the decision cannot stand without further support for the ALJ's conclusion that she could communicate in English, which was a finding pertinent to the Step Five determination under the version of the Regulations that was in effect at that time. (Pl. Br. at 2.)

We will begin with one of the issues implicating the ALJ's Step Four determination, inasmuch as a successful defense by the Commissioner of that finding would render moot the other issues challenging the alternative Step Five analysis. We do, in fact, agree with Plaintiff that the

ALJ's Step Four determination is marred by error. Accordingly, we proceed to examine whether Plaintiff also undermined the validity of the Step Five determination that reflected the ALJ's alternative basis for denying her claim. We also find an error in that analysis. However, inasmuch as it was harmless error, the decision of the ALJ can stand.

> **A.   Whether Cintron could perform her past relevant work given the limitations adopted by the ALJ (Step Four)**

Plaintiff contends that the ALJ's decision is not supported by substantial evidence at Step Four in two respects. She contends first that the ALJ erred by relying upon the VE's "equivocal" responses as to whether her job as a secretary, as she actually performed it, spared her from having to interact with others. She also contends that the VE testimony was in conflict with the Dictionary of Occupational Titles (the "DOT") and thus required the ALJ to acknowledge and resolve this conflict, which he did not do. (Pl. Br. at 9-10.) We agree that the ALJ Erred in reaching his Step Four finding based on the VE testimony that was given.

At the hearing, the VE's testimony concerning Cintron's past work explored the nature of a "receptionist" position she held in 2007 at a prosthetic manufacturing company, which the VE considered equivalent to DOT # 237.367-010, and a "secretary" job she held in 2011 at a dental office. As to the latter, the VE sought further information from Cintron:

> VE: My question is about the secretary. You know, there's different kinds of secretaries. Was she more like a – did she answer phones, was she more like an office clerk, or did she do a lot of computer work, administrative work? That would be my question.
>
> [CLAIMANT]: I greeted patients. I did data entry of all the patients' information into the computer. I did filing. I paid the office bills, and I did the office billing, and I also made purchases for the office.

(R. 55.) The VE confirmed that Cintron provided sufficient information for her to recognize that the position was that of a secretary, corresponding with DOT # 201.362-030. (R. 56.) The VE explained that the position was sedentary work and at the SVP rating of 6.[4] (R. 56.)

The ALJ then posed a hypothetical question to the VE that was consistent with his ultimate RFC finding, in that it referred to someone who, *inter alia*, "can have only occasional interaction with the public, coworkers, and supervisors." (R. 20.) When asked if such an individual could perform Cintron's past work – e.g., receptionist or secretary – the VE answered:

> No, Your Honor. Well, I take that back. I think *possibly the secretary position* **if** it's in a smaller office, and there's not a lot of – it's more office work, and less contact with the public.

(R. 56 (emphases added).) She then testified that there were approximately 60,000 such jobs. (*Id.*)

When the ALJ recounted in his decision the vocational testimony at the hearing, he described the hypothetical question that he posed to the VE and characterized the VE's response as reflecting "that based on the claimant's residual functional capacity the claimant could perform her past relevant work as a Secretary, *as it was actually performed*." (R. 24 (emphasis added).) Accordingly, the ALJ ultimately found at Step Four that Cintron was "capable of performing past relevant work as a Secretary, *as it was actually performed*." (R. 24, Finding No. 6 (emphasis added).) *See also id.* at 24 (stating in narrative portion of decision that he "concurs with the testimony of the vocational expert and finds that the claimant can perform past relevant work as a Secretary, *as it was actually performed*") (emphasis added).

Plaintiff interprets the VE's testimony as establishing that she could perform her past relevant work only under certain conditions but notes that the ALJ purportedly relied on the

---

[4] SVP refers to the degree of "specific vocational preparation" needed to learn the techniques required for average performance in that job. SVP level 6 reflects that it would take "over 1 year up to and including 2 years" to adequately perform the job. *See generally* POMS DI 25001.001 Medical and Vocational Quick Reference Guide.

8

vocational testimony as evidence that she could perform her past relevant work "as it was actually performed." She contends that the ALJ provided no analysis in his decision of her actual past work as a secretary, particularly as to the level of interaction it required with others, yet he ruled that she could work this job as she had "actually performed" it in the past. The Commissioner responds that the VE's testimony was sufficient to establish that Plaintiff could perform past relevant work. *See* Def. Br. at 15 ("The [VE] testified that the hypothetical individual with the limitations described by the ALJ could perform Plaintiff's past relevant work, as she actually performed it (Tr. 56)."); *id.* at 16 n.4 ("The [VE] then stated that she believed that Plaintiff's prior work as a secretary could fit the hypothetical (Tr. 56).") .

The Commissioner's position is not tenable. The only plausible reading of the VE's response to the ALJ's hypothetical question was not that Cintron could perform the secretarial tasks that she described having performed before. Rather, it was that she would be capable of performing a subset of secretarial positions: those that were in a smaller office and involved "more office work, and less contact with the public." (R. 56.)[5] Having reviewed the hearing transcript with care, we are quite sure that the VE did *not* testify that Cintron, with the RFC presented in the hypothetical and ultimately adopted by the ALJ, could perform her past secretarial work as she described it. The repeated assertions to the contrary in the ALJ's decision and the Commissioner's brief do not make it otherwise.

The ALJ's Step Four finding that Cintron can perform her past work "as it was actually performed" cannot support his determination that Cintron is not disabled. Remand would be

---

[5] The ALJ's subsequent inquiry of the VE as to the number of such jobs in the national economy would have been relevant to Step Five but not to the question of Cintron's ability to perform past relevant work.

appropriate unless the Step Five alternative finding withstands scrutiny. We proceed now to examine that finding in light of the other issues raised by Plaintiff.

      **B.    The absence of other mental limitations in the RFC finding and hypotheticals to the VE**

Plaintiff also contends that the ALJ erred where his RFC finding, which was applied at Steps Four and Five to support the conclusion that she was not disabled, did not accommodate certain mental limitations that the ALJ had found credible in an earlier step of the sequential evaluation process. She points particularly to the findings during his Step Three analysis that she had "mild limitations" in three functional areas due to depressive disorder: her ability to adapt or manage herself; to understand, remember, and apply information; and to concentrate, persist, or maintain pace. (R. 20.) *See* Pl. Br. at 4. While Cintron acknowledges that the ALJ "arguably" accommodated in the RFC finding her "moderate limitations" in interacting with others, in that he restricted her to jobs requiring no more than occasional interaction with the general public, co-workers, and even supervisors, she contends that these "mild" limitations did not find adequate expression via specific functional limitations in the RFC determination.[6]

A limitation rated as "mild" indicates that the claimant's ability to function "independently, appropriately, effectively, and on a sustained basis is slightly limited." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00F(2)(b) (emphasis added). In the same way in which Plaintiff has overstated the definition of a "mild" limitation, we find her to have overstated what is required of an ALJ who

---

[6] Much of Plaintiff's argument in this section of her brief is directed to the Step Four finding that she could still perform past work that was characterized as "skilled" work and thus required a high reasoning level and dealing with people, facts, or figures at a high level of complexity. *See* Pl. Br. at 5-6. As we have already resolved Step Four in her favor, we need consider only how any alleged defects in the RFC finding may have impacted the Step Five analysis.

finds such a limitation.[7]  The precedents cited by Plaintiff do not require an ALJ to include in the RFC finding any particular restriction due to "mild" limitations that he recognized were caused by a mental health condition acknowledged earlier in the Five-Step process.  When our Court of Appeals decided *Ramirez v. Barnhart,* 372 F.3d 546 (3d Cir. 2004), ALJs were required to analyze at Step Three the frequency with which the claimant's mental disorder interfered with the ability to carry out various functions.  The court held that a finding that the claimant "often" suffered from deficiencies in concentration, persistence, or pace – using a scale that has since been replaced – was not adequately expressed by an RFC finding that limited the claimant to "no more than simple one or two-step tasks."  *Id.* at 554.[8]  The other cases cited by Plaintiff, however, do not endorse the notion that limitations rated as "mild" *must* be reflected in the RFC finding or otherwise explicitly addressed by the ALJ where there was not a question of the claimant's ability to perform "skilled" work.  *See* Pl. Br. at 6 (citing cases for the proposition that failure to include mental limitations in RFC is legal error "when the issue involves performing skilled work").[9]  At Step Five, the VE here identified only positions that were explicitly *unskilled*.  We fail to see how

---

[7] Plaintiff left the modifier "slightly" out of her description of this definition when reciting the definition of this term in her brief.  *See* Pl. Br. at 4 ("A 'mild' limitation indicates that a claimant's ability to function 'independently, appropriately, effectively, and on a sustained basis' **is limited.** 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00F(2)(b).") (emphasis added).  The Regulation actually reads that the ability is "slightly limited."

[8]  The court in *Ramirez* was not satisfied that the ALJ met the Step Five burden where there was no evidence that the claimant could keep up with the pace of jobs identified by the VE that would have entailed production quotas, even if the actual tasks to be performed were "simple." *Id.* at 554.

[9] The bulk of Plaintiff's argument is directed toward the absence of a function-by-function analysis of how her acknowledged mental limitations (whether of a "mild" or "moderate" degree) would impact her ability to perform the *skilled* work of a secretary, with its varied duties and the requisite exercise of judgment.  This analysis does not apply with the same force, however, to the Step Five alternative finding rendered by the ALJ.

11

the ALJ's Step Five finding could be deemed insufficient where merely "mild" limitations in three functional areas relating to information processing, concentration, and adaptation would not appear to be implicated by the positions selected by the VE. Nothing in the record suggests that additional functional restrictions in the RFC were necessitated by Plaintiff's mild limitations in these domains. Therefore, we are satisfied that the ALJ's alternative Step Five finding was supported by substantial evidence in this regard and not marred by legal error.

      C.    **The ALJ's alleged failure to develop the record as to physical and mental impairments**

Cintron next contends that remand is required in that, in contravention of his duties, the ALJ failed to develop the record both as to her mental limitations and her physical impairments. With respect to the former, she notes that at the time the record was gathered by the state agency and presented for review and analysis to a state agency psychologist in October 2017, it did not contain any mental health treatment records. As a result, when the psychologist's opinion was sought as to the degree of Cintron's limitation from mental impairments and an assessment of her functional capacity, the psychologist responded that "the available medical record contains insufficient evidence to assess this claim." (R. 95.) Cintron now complains that, while her treatment notes were later obtained and added to the record in advance of the ALJ hearing,[10] no records related to her mental impairments ever received review from any mental health professional, "in violation of Agency policy." (Pl. Br. at 12.) She contends that the ALJ could have requested an updated state agency review to obtain a reviewing psychologist's analysis and asserts that a consultative psychological examination could have been arranged for her, as she alleges her counsel requested. She complains that, instead, the ALJ "relied upon his own lay

---

[10] She recognizes that evidence of mental health impairments are reflected in the notes of treatment she received from the Tree of Life clinic from April 2016 through January 2019, which are found (now) in the record at R. 669-759.

12

judgment in assessing the objective and clinical findings regarding [her] mental impairments." (Pl. Br. at 12.)

As noted by the Commissioner, none of the notes from the providers Plaintiff saw for his physical impairments that were in the record at the time of the state agency review in 2017 could have led the reviewing psychologist to reach any conclusions other than those he offered: that "[t]here is insufficient evidence to substantiate the presence of" depressive disorder or anxiety disorder (R. 94-95), and that "the available medical record contains insufficient evidence to assess this claim." (R. 95.) The reviewing psychologist cannot be faulted for providing an accurate account of what conclusions could or could not be drawn from the record that was before him at that time.

With respect to Plaintiff's suggestions that the psychologist's comments should have prompted the scheduling of a consultative examination (a "CE") at the hearing stage, we note that the Regulations give discretion to the ALJ regarding what he or she thinks is necessary when there is insufficient evidence or an inconsistency in the evidence of record. They explain that a CE will be scheduled for the claimant following an individual review. *See* 20 C.F.R. § 404.1519 (noting that CE purchase decisions "will be made on an individual case basis"). The Regulations identify some situations that may require a CE, such as "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim." 20 C.F.R. § 404.1519a(b). We do not find the ALJ's exercise of discretion here to have been inappropriate. Plaintiff has not pointed to any "insufficiency" or "inconsistency in the record regarding her mental health conditions or the limitations arising therefrom. *Cf.* 20 C.F.R.

§ 404.1519 (setting forth bases for CE to be purchased).[11]  The later addition of mental health treatment notes to the record does not trigger an obligation in the ALJ to develop opinion evidence to further add to the record.  The ALJ did not abuse his discretion in this regard.

Cintron makes similar contentions about the record of her physical impairments, which counsel argued at the hearing was complicated and could benefit from a physical consultative examination.  She notes that the state agency reviewing physician relied on medical records only through March 2017 and that his opinion was thus based on review of only a small portion of the medical records at issue.  She contends that the ALJ's reliance upon an outdated opinion of a reviewing source who had reviewed so little amounted to "serious legal error." (Pl. Br. at 13.)  Yet it is almost always the case that state agency reviewing experts render opinions based upon a less developed record than that which is later before the ALJ.  And that does not mean that the opinion should be disregarded or that a new opinion need be obtained.  We take the Commissioner's point that Plaintiff has not suggested that evidence provided after the state agency review "was in any way inconsistent with the evidence provided after the date of the review by" the reviewing physician.  (Def. Br. at 14.)  We would not remand for a CE where it has not been shown that it would be of any consequence.

---

[11] Plaintiff's argument is based in part on slight misstatement as to the record.  Prior to her hearing, her attorney provided the ALJ a written list of her treatment providers and the dates of treatment.  He included in that list the clinic at which she saw a psychiatrist and received psychotherapy.  Counsel did not obtain from the treating psychiatrist at the Tree of Life Clinic any opinion as to Cintron's RFC, nor did he request that the ALJ schedule a consultative examination with an independent psychologist.  *See* R. 244-46.  While counsel advised the ALJ that "the state agency here never did a PRT" and that "[w]e've never had a qualified psychiatrist or psychologist review the record," he argued that "it's pretty obvious" "that we have an individual who wouldn't be capable of the skilled, past relevant work."  (R. 60.)  The only suggestion counsel made as to the ALJ's option to schedule a consultative examination at that point in time concerned "a *physical* C.E.," in light of the alleged complexity of her fibromyalgia and anemia diagnoses.  (R. 60-61.)  Prior to the issuance of the ALJ's decision, counsel did *not* request that the ALJ arrange for a psychiatric or psychological consultative examination and RFC opinion.

14

### D.     The ALJ's finding that Cintron could communicate in English

Plaintiff's final argument is related exclusively to the Step Five analysis. This step involves consideration of the Medical-Vocational Rules ("the Grids"), either to direct a finding of "disabled" or "not disabled" or, where the claimant has additional restrictions that erode the vocational profile, to establish a framework for decisionmaking. *See, e.g.,* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(d). Plaintiff notes that, under the version of the Regulations in effect at the time of the ALJ's decision, given her limitation to light work and lack of transferable skills, she would have been found disabled as of her 50th birthday in August 2018 if she were also unable to communicate in English, which was considered pertinent to her level of education. (Pl. Br. at 14.) Plaintiff challenges the evidentiary basis for the ALJ's factual finding that she "is able to communicate in English" (R. 25) and thus does not fall in the categories set forth at § 202.00(d).[12] She argues that the ALJ's failure to articulate the basis for his finding regarding her English language skills requires remand for further consideration. (Pl. Br. at 16.)

The Commissioner has taken the position, articulated in her response brief, that we should accept the ALJ's factual finding as supported by substantial evidence on this record. This we cannot do. The ALJ offered *no explanation* for his finding – providing not even a "mere scintilla" of evidence – and we cannot countenance the Commissioner's efforts to comb the record to present

---

[12]     Plaintiff's brief discusses in detail how the Commissioner has interpreted the factor of "inability to communicate in English" in its policy manuals and what evidence was before the ALJ that would be indicative of Plaintiff's abilities in this regard. In the POMS resource, for example, this inability it is characterized by the presence of any of four criteria: (1) an inability to read English; (2) an inability to write English; (3) an inability to speak English; or (4) an inability to understand English. POMS DI 25001.001(b)(17). Plaintiff points to her statements in her initial application materials and at the hearing about her inability to read English or to have a conversation in English, as well as her inability to write more than her name in English. (Pl. Br. at 15; R. 183, 206, 51-52.) She notes that SSA acknowledged her English language limitations in its practice of sending her notices in Spanish. Yet the ALJ's decision is silent as to his finding that she could communicate in English.

15

such evidence *post hoc* and proffer it as "substantial." *See* Def. Br. at 19 (citing to notations in medical records that list her preferred language as English). *See also* Pl. Reply at 7-8 (complaining of same); *S.E.C. v. Chenery*, 318 U.S. 80, 87 (1943). We simply cannot characterize as "reasonable" an unexplained finding of English language proficiency in a record where the ALJ witnessed Plaintiff testify with the assistance of an interpreter, heard her testify that she can only speak and understand a few words of English, and sent her his written decision in both English and Spanish translation.

We agree with Plaintiff that this was error by the ALJ. At the same time, we find that this error does not require remand because it has been rendered harmless by subsequent rulemaking that revised the Regulations. Effective April 27, 2020, a proposed rule took effect that eliminated the English language literacy consideration from the calculus of a claimant's level of education. Moreover, the agency pledged to "begin to apply this final rule to new applications, pending claims, and [continuing disability reviews], as appropriate, as of the effective date of this final rule." 85 Fed. Reg. 10600-01 (Feb. 25, 2020). The final rule was clear as to the scope of application: "This means that we will use the final rule on and after its effective date in any case in which we make a determination or decision …." *Id.* at 10601, n.95. This new rule thus would be applied to Cintron's claim if it were remanded for a new decision, and any English language communication deficiencies would no longer be relevant. Rather, the Grid rule that would be used as a framework for decisionmaking would point towards a finding that she is "not disabled" in light of her high school education and her literacy in Spanish. As the question of Cintron's English language proficiency would not be relevant on remand, we find the ALJ's error in his consideration of this factor in the 2019 decision to be harmless.

## V. CONCLUSION

Although we found error in the ALJ's analysis at both Steps Four and Five, we do not find it appropriate to remand the matter for further proceedings. With respect to the Step Five finding, the rule that Plaintiff had sought to be properly applied as to English language proficiency is no longer in effect. Under the new terms of the rule, the Grids would no longer direct a finding of disability as they did under the prior version. There is no reason to believe that the outcome of the Step Five analysis would thus be any different than it was in the 2019 decision. Moreover, while we agree with Plaintiff that the ALJ's Step Four finding lacked the support of substantial evidence, that finding is mooted out by the Step Five finding that we uphold. Therefore, Plaintiff did not suffer harm when the analysis proceeded to Step Five. None of the other issues raised by Plaintiff persuade us that the ALJ's decision must be vacated and reversed.

An appropriate order will follow.

BY THE COURT:

/s/ David R. Strawbridge, USMJ
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE